# STATE v. GEORGE B. FINDLING.[1]

## November 21, 1913.

## Nos. 18,222—(14).

**Punishment upon second conviction.**

1. Section 4772, R. L. 1905, providing for increased punishment of persons convicted of certain crimes where it appears that they had previously been convicted of a felony, *held* valid, and not in violation of the twice in jeopardy clause of the state Constitution.

**Same.**

2. In the absence of some statute regulating the procedure, to authorize the court to impose the increased punishment, the fact of the prior conviction must be set forth in the indictment, established by proper evidence, and passed upon by the jury.

**Same — proof.**

3. Though alleged in the indictment, it is unnecessary for the state to prove that the judgment of conviction in the former prosecution has not been reversed or set aside.

**Judgment roll — presumption.**

4. The judgment roll, offered in evidence, appearing fair upon its face, the judgment will be presumed in full force and effect until the contrary is shown.

**Evidence — res gestæ.**

5. The person charged to have been killed by the wrongful act of defendant was a boy about eight years of age. Within a few minutes after the injury was inflicted upon him, and which caused his death, he related to a near relative what had occurred, and this relative was permitted to testify to the statements so made to her on the trial of the indictment charging defendant with his death. It is *held* that the statements of the injured boy formed part of the *res gestæ* and were properly received in evidence.

[1] Reported in 144 N. W. 142.

Note.—The authorities on the question of enhancing penalty when crime committed by habitual criminals or prior offenders are collated in notes in 34 L.R.A. 398 and 24 L.R.A.(N.S.) 432.

**Dying declaration — evidence.**

6. The deceased, a short time prior to his death, held a conversation with the county attorney upon the subject of his injuries and as to who inflicted them, during which he pointed out defendant as the guilty party. It is *held* that the county attorney was properly permitted to testify to this conversation, since the whole object, purpose and effect thereof was to identify the person who committed the crime.

**Same.**

7. The testimony so given by the county attorney, in so far as it extended beyond showing the fact that the boy recognized and identified the defendant as the person who assaulted him, was without prejudice to the substantial rights of the defendant.

**Assignments of error.**

8. Numerous assignments of error considered and *held* to present no ground for a new trial.

Defendant was indicted by the grand jury, tried in the district court for Hennepin county before Booth, J., and a jury, and convicted of murder in the third degree. From an order denying a new trial, he appealed. Affirmed.

*James Cormican,* for appellant.

*Lyndon A. Smith,* Attorney General, *James Robertson,* County *Attorney,* and *Erland Lind,* Assistant County Attorney, for respondent.

BROWN, C. J.

Defendant was indicted and convicted of the crime of murder in the third degree and appealed from an order denying a new trial.

A large number of errors are assigned and discussed in the briefs, and those requiring special mention will be disposed of in their order.

1. The first assignment challenges the constitutionality of section 4772, R. L. 1905. This statute provides, stated in a word, for increased punishment for second offenders, and the contention is that the statute is in conflict with that provision of the Constitution declaring that no person "shall be put twice in jeopardy of punishment" for the same offense. Section 7, Art. 1, Const. The indictment charged the specific offense for which defendant was placed

on trial, and further alleged the prior conviction. At the opening of the trial defendant moved to strike out all allegations in reference to the prior offense. The court denied the motion, and the question of the validity of the statute is thus raised. Though the statute in question has been upon our statute books for a number of years the question of its validity has not heretofore been presented in this court for consideration. Similar provisions are found in the statutes of other states, and when called in question the constitutionality thereof has been affirmed. McDonald v. Massachusetts, 180 U. S. 311, 21 Sup. Ct. 389, 45 L. ed. 542; State v. Dowden, 137 Iowa 573, 115 N. W. 211; State v. Le Pitrie, 54 Wash. 166, 103 Pac. 27, 18 Ann. Cas. 922; Herndon v. Com. 105 Ky. 197, 48 S. W. 989, 88 Am. St. 303; People v. Coleman, 145 Cal. 609, 79 Pac. 283; People v. Craig, 195 N. Y. 190, 88 N. E. 38; People v. Sickles, 156 N. Y. 541; Hall v. Com. 106 Ky. 894, 51 S. W. 814; In re Miller, 110 Mich. 676, 68 N. W. 990, 34 L.R.A. 398, 64 Am. St. 376; Ingalls v. State, 48 Wis. 647, 4 N. W. 785. The theory of the courts in upholding the statute is tersely stated by Judge Taylor in Ingalls v. State, 48 Wis. 647, 658, 4 N. W. 785, as follows:

"We are unable to see how the statute which imposes a greater punishment upon a person who commits a second or third offense of the same character than it imposes upon the person who is convicted of a first offense, violates the provision of our Constitution which prohibits putting a person twice in jeopardy for the same offense. The increased severity of the punishment for the subsequent offense is not a punishment of the person for the first offense a second time, but a severer punishment for the second offense, because the commission of the second offense is evidence of the incorrigible and dangerous character of the accused, which calls for and demands a severer punishment than should be inflicted upon a person guilty of the first crime."

But counsel for defendant insists that the Constitution of many of the states, where the statute has been sustained, differs in a material respect from the Constitution of this state, and that the decisions referred to are inapplicable. The difference pointed out is found in the fact that in most of the states the language of the Constitution is that

no person shall be "twice put in jeopardy," while the provision of our constitution is that no person shall be "twice put in jeopardy of *punishment.*" We fail to appreciate any difference in point of substance between the language included in the above quotations. "Twice in jeopardy" and "twice in jeopardy of punishment" mean the same thing. In fact the Constitution of Wisconsin, where the statute is held valid, contains the language found in the Constitution of this state. In harmony with the authorities cited we affirm the validity of the statute without further discussion.

2. Defendant further contends that the matter of the prior conviction was improperly pleaded in the indictment, and, whether properly or improperly pleaded, that the court erred in admitting evidence of the same to go before the jury. This contention cannot be said to be wholly without merit. It may well be urged that the introduction of evidence by the prosecution of prior convictions would naturally tend to prejudice the accused before the jury, and lead to his conviction on general grounds as a bad person, and one that should be under restraint rather than at large. But the authorities do not sustain the contention that such evidence is inadmissible. In fact by the great weight of opinion it is held that the evidence, and a verdict of the jury finding the prior conviction, are essential to the power of the court to impose the increased punishment. At least such is the rule in nearly all the states where no statutory method of determining the prior conviction is prescribed.

Two questions of fact are presented in such case, namely: (1) The prior conviction, and (2) the identity of the accused as the same person in each prosecution. And the courts applying this rule all hold that the prior offense must be charged in the indictment and also established on the trial, and a verdict of the jury rendered thereon. Underhill, Crim. Ev. (2nd. Ed.) § 512; 8 Am. & Eng. Enc. 486; Hines v. State, 26 Ga. 614; Maguire v. State, 47 Md. 485; People v. Sickles, 156 N. Y. 541, 51 N. E. 288; Paetz v. State, 129 Wis. 174, 107 N. W. 1090, 9 Ann. Cas. 767, and authorities cited in notes in 9 Ann. Cases, 768, and 22 Ann. Cases, 1000. The only dissent from the rule stated is found in State v. Smith, 8 Rich. (S. C.) 460, and State v. Hudson, 32 La. Ann. 1052. All other

courts where the question has been presented hold that the prior conviction must be pleaded and proven on the trial, and no distinction is made because of the fact that in some of the states the punishment is fixed and determined by the jury, and in others by the court upon a verdict of guilty. We follow and apply the general rule, though it may be remarked, in passing, that entire fairness in prosecutions of this character would suggest some statutory change in the law, dispensing with the necessity of pleading the fact of prior conviction, and providing for the determination thereof by the court after conviction of the charge on trial. This would avoid any possible prejudice to defendant.

3. The indictment pleaded the former conviction, and further that the judgment of conviction had not been reversed or set aside. The state offered no evidence showing that the former judgment had not been set aside, and defendant contends that this was error for which a new trial should be granted. We do not sustain the point. The state having proved the former conviction by offering in evidence the judgment roll, the burden was upon defendant to show, if such was the fact, that the judgment had been reversed or set aside. The judgment appearing fair upon its face, the presumption arises that it was at the time of the trial still in force and effect. It was not necessary that the state prove that it had not been vacated or set aside. Underhill, Crim. Ev. § 514.

4. The act committed by defendant which resulted in the charge made against him by the indictment, namely: Murder in the third degree, was the commission of the crime against nature upon the person of a boy eight years of age, as a result of which the boy died on the day following the outrage. The crime was committed at about the hour of noon of the twenty-ninth day of May, 1911, in a barn situated near the residence of a relative of the boy, to which he had been lured by the guilty person. Immediately after the act had been committed the boy made his way to the residence of his relative, bearing indisputable evidence of brutal conduct at the hands of some one. He appeared at the back door of the home of this relative, his aunt, within ten or fifteen minutes, and then related to her what had occurred. The state produced this witness at the trial and

123 M.—27.

she was permitted over the objection of defendant to relate what was said to her by the injured boy. Of this defendant complains. We are of the opinion and so hold that the testimony of this witness was properly received in evidence as part of the *res gestæ*. The statements and declarations testified to were made by the boy immediately after the injuries had been inflicted upon him, and under circumstances clearly tending to vouch for their truthfulness. The ruling of the court is fully sustained by State v. Alton, 105 Minn. 410, 117 N. W. 617; and State v. Horan, 32 Minn. 394, 20 N. W. 905, 50 Am. Rep. 583; State v. Williams, 96 Minn. 351, 105 N. W. 265, and authorities there cited.

5. The boy was taken to the hospital where he died the day following the crime. During the forenoon of that day the county attorney called to see him for the purpose of eliciting information concerning the crime and had an extended conversation with him. It was then known that the boy would probably die as the result of his injury, and the prosecuting officer was anxious to learn the identity of the guilty party. During this conversation the defendant, who had been previously arrested and charged with the crime, was brought into the room, and was identified by the boy as the person who injured him. The county attorney took the witness stand and was permitted to detail what the boy said on this occasion. To this defendant objected, and it is claimed that the ruling of the court admitting the evidence was reversible error. In this we do not concur. The evidence presented by the state leaves no doubt, reasonable or otherwise, that the boy had been brutally assaulted by some one, and the crime against nature committed upon his person. The important inquiry on the trial was whether defendant or some other person was the guilty party. While the state now claims that what the boy said at this time was properly admitted as a dying declaration, he having been informed at the time that he was about to die, we do not find it necessary to consider the correctness of that contention. It may be conceded, in harmony with defendant's claim, that the evidence was inadmissible as a dying declaration, since no sufficient foundation therefor had been laid. But we are clear, in view of the state of the facts as indisputably shown, namely: The commission of the

crime by some person, that the particular evidence was admissible as tending to the identification of defendant as the person who committed it. Underhill, Crim. Ev. § 55. It could serve no other purpose, and whatever was said beyond the point of identification was either corroborative of what the boy had previously said to his aunt immediately after the crime had been committed, or was irrelevant to any issue in the prosecution, and therefore without prejudice. The evidence does not sustain the claim of defendant to the effect that when he entered the room the county attorney pointed to him and asked the boy whether that was the man who hurt him; on the contrary it fairly appears that the boy singled defendant out from others present and pointed to him as the person who committed the act. Considerable latitude is always permissible in the introduction of evidence upon questions of identification (Underhill, Crim. Ev. § 55; Craig v. State, 171 Ind. 317, 323, 86 N. E. 397) and we are clear that the evidence was properly received for that purpose.

6. A large number of assignments of error challenge the rulings of the court in the admission and exclusion of evidence. We have given these matters careful attention with the result that no reversible error appears. Much of the evidence now claimed to have been erroneously admitted, was received without objection, and the assignments have no exception to support them. Other alleged errors in the admission of evidence relate to unimportant matters. The question whether the witness Leona Donahue, sister of the injured boy, upon whose description of the man who lured her brother to the barn, given a short time thereafter, the officers arrested defendant, was a competent witness owing to her youth was a matter peculiarly for the trial court. We discover no error in permitting her to be sworn as a witness, nor error in the admission of her testimony expressly pointing defendant out as the person she had previously described. Andrews v. State (Tex. Crim. App.) 83 S. W. 188. The assignments alleging misconduct on the part of the county attorney in the conduct of his cross-examination of defendant are not sustained. While the county attorney in this respect approached closely the prejudicial line, the case is not brought within the rule of State v. Fournier, 108 Minn. 402, 122 N. W. 329. Nor was there error,

requiring a new trial, in the cross-examination of Anna Bangs, a witness produced by defendant, and whom defendant claimed was his common-law wife. The cross-examination of the witness did not extend beyond the legitimate purpose of testing her credibility, which the state had the right to inquire into. The matter of cross-examination for this purpose rests in the discretion of the court, no abuse of which is disclosed by the record. 3 Dunnell, Minn. Dig. § 10,348; Underhill, Crim. Ev. 221.

We pass all other assignments of error either as without an objection or exception upon which to base them, or as presenting matters not requiring special mention. We have considered all of them and find therein no error of a character to justify a new trial.

The assignment that the verdict is unsupported by sufficient competent evidence does not call for extended discussion. The important question on the trial was, as heretofore stated, the identity of the person who assaulted the boy and thus caused his death. The question whether defendant was that person was, on the evidence, one of fact for the jury. The evidence is amply sufficient to support their conclusion. We do not review the evidence, it is unnecessary, and would serve no useful purpose. It is sufficient to say that it has been examined with care, and sufficient therein found to justify, beyond a reasonable doubt, a verdict of guilty. The approval of the verdict by the learned trial judge only tends to confirm that view of the evidence.

Order affirmed.